

**SIGNED this 29 day of April, 2016.**

_____
**John T. Laney, III
United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| **In re:** | * | |
| **JONATHAN NORTHINGTON,** | * | **Chapter 13** |
| Debtor, | * | **Case Number: 15-40877- JTL** |
| | * | |
| **TITLE MAX,** | * | |
| | * | |
| Movant, | * | |
| | * | **Contested Matter** |
| v. | * | |
| | * | |
| **KRISTIN HURST, TRUSTEE,** | * | |
| **and JONATHAN NORTHINGTON,** | * | |
| | * | |
| Respondents. | * | |

**MEMORANDUM OPINION**

This contested matter comes before the Court on a Motion for Relief from the Automatic Stay filed on January 8, 2016 by the Movant, Title Max. In this Motion, Title Max seeks relief from the stay to pursue its state rights against a 2006 Toyota Avalon (the "vehicle"). The Court

1

held a hearing on February 2, 2016. At the hearing, the parties stipulated to facts and requested an order scheduling the briefing period. On the same day, the Court entered a scheduling order. Briefs were filed and considered by the Court.

Pursuant to 28 U.S.C. § 157(b), proceedings regarding relief from the automatic stay are core proceedings. The Court states its findings of facts and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, which is applicable to contested matters through Federal Rule of Bankruptcy Procedure 9014(c). The issue before the Court is whether the doctrine of res judicata bars Title Max from challenging a confirmed Chapter 13 plan.

**Findings of Fact**

The parties have stipulated to the following facts, which the Court adopts as its findings. The Debtor entered into a pawn transaction with Title Max on August 27, 2015. Under the pawn transaction, the Debtor delivered to Title Max the certificate of title on his vehicle in exchange for a cash advance of $5,253. The pawn transaction between the parties was a true pawn transaction as defined by O.C.G.A. § 44-12-130(3). Pursuant to the pawn transaction, the Debtor had no obligation to repay the money advanced by Title Max, redeem the vehicle, or repurchase the vehicle at a stipulated price. The pawn transaction matured on September 26, 2015. Pursuant to O.C.G.A. § 44-14-403(b)(1), the Debtor had thirty days from the maturity date to redeem the vehicle by paying off in full the remaining balance of the principal, interest, and pawnshop charges outstanding with Title Max. That grace period ended on October 26, 2015. On October 2, 2015, the Debtor filed a petition for bankruptcy relief under Chapter 13. Pursuant to § 108(b) of the Bankruptcy Code,[1] the Debtor had sixty days from the petition date to redeem

---

[1] All statutory references hereinafter and not otherwise denoted are to Title 11 of the United States Code, which is referred to as "the Bankruptcy Code."

2

Case 15-40877    Doc 24    Filed 04/29/16    Entered 05/02/16 09:43:45    Desc Main
                            Document      Page 3 of 11

the vehicle. That extended period ended on December 1, 2015. The Debtor did not redeem the vehicle by December 1. The Debtor is currently in possession of the vehicle.

The Court took judicial notice of the following facts. The Debtor filed a Chapter 13 plan on October 2, 2015. The Court confirmed the plan at the confirmation hearing held on December 21, 2015 and entered a confirmation order on January 22, 2016. The confirmed plan proposes to pay Title Max as fully secured with 5% interest with payments of $160 per month on the $5,825 debt.[2] The listed value of the vehicle is $7,000. The plan provided for preconfirmation adequate protection payments of $15 per month. Title Max filed Proof of Claim #5 on February 8, 2015 claiming a secured claim in the amount of $5,846.95 with an annual interest rate of 5%, the collateral being the vehicle.

**Conclusions of Law**

I.  Property of the Estate

In Georgia, a pawn transaction is a loan secured by pledged goods, which the borrower may redeem or repurchase for a fixed price within a fixed period of time. O.C.G.A. § 44-12-130(3). Georgia law provides a borrower with a right to redeem property after the maturity date. O.C.G.A. § 44-14-403(b). If the pledged good is a motor vehicle or motor vehicle certificate of title, the borrower has the right to redeem the vehicle by paying in full the outstanding balance, including principal, interest, and pawnshop charges, owed to the pawnbroker. O.C.G.A. § 44-14-403(b). The borrower has thirty days from the maturity date to exercise his right of redemption.

---

[2] Title Max asserts that the redemption price as of the maturity date was $5,846.95. Title Max alleges that the redemption price as of December 1 was $6,425.91. The Debtor does not dispute these amounts in his brief. The Court notes that the amount listed in both the Debtor's Schedule D and confirmed plan is less than those amounts.

O.C.G.A. § 44-14-403(b). The Bankruptcy Code extends that period for sixty days from the petition date upon filing a petition. 11 U.S.C. § 108(b).

Title Max argues that the Debtor's right to redemption was not property of the estate at the time the plan was confirmed because any such right expired prior to the plan's confirmation. The Debtor argues that he had a legal right of redemption at the time of filing his petition and that this right did not disappear prior to confirmation of the plan. Under § 541, the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property *as of the commencement of the case.*" 11 U.S.C. § 541(a)(1) (emphasis added). In *In re Howard*, the court opined on whether a right to redemption became property of the estate when a debtor filed a petition during the redemption period. 507 B.R. 394, 398, 399-400 (Bankr. N.D. Ga. 2014). The court noted that "if a debtor files for bankruptcy protection while he or she still has a right to redeem the property, then that right of redemption becomes property of the debtor's estate." *Id.* at 398 (citing *Oglesby v. Title Max (In re Oglesby)*, 2001 WL 34047880 (Bankr. S.D. Ga. Oct. 23, 2001)). However, the grace period in that case expired prepetition; therefore, the court determined that any right of redemption held by the debtor prepetition was not property of the estate. *Id.* at 399-400.

When the Debtor filed his Chapter 13 petition on October 2, 2015, the grace period had not expired. Title Max concedes that the Debtor "retained both a possessory interest . . . and statutory right of redemption" at the commencement of the case, and those interests were property of the estate at that time. However, Title Max argues that the Debtor's right to redeem the vehicle expired when the Debtor failed to make a lump sum payment of the redemption price prior to December 1.

4

Some Georgia courts have held that the debtor must exercise his right of redemption by paying the full redemption price prior to the expiration of the sixty days provided by § 108(b). *See Paul v. So. Ga. Title Pawn (In re Paul)*, 534 B.R. 430 (Bankr. M.D. Ga. 2015) (adopting the conclusion of the court in *In re Oglesby* that the debtor must exercise his redemption rights within sixty days from filing his petition); *In re Oglesby*, 2001 WL 34047880, at *4 ("[W]hen Debtors [fail] to exercise their right of redemption within the sixty-day extension provided by § 108(b), any legal or equitable interest they possessed in the vehicle [ceases] to be part of their bankruptcy estate. . . ."). The courts reasoned that the bankruptcy estate had no interest in the vehicle after the expiration of the sixty-day redemption period. *Id.* In *In re Paul* and *In re Oglesby*, the debtors were no longer in possession of their respective vehicles at the commencement of their cases. *In re Paul*, 534 B.R. at 431; *In re Oglesby*, 2001 WL 34047880, at *1. The debtors had no possessory interests in the vehicles, and therefore, their bankruptcy estates had no such interests. *Id.* However, the Debtor in this case was in possession of the vehicle at the time he filed his petition, and he is currently in possession of the vehicle. *See In re Thompson*, 2014 WL 1330110, at *4 (Bankr. S.D. Ga. Mar. 31, 2014) ("Debtor was in possession of both Vehicles at the time of filing. Therefore, at the time of the order of relief – the filing of the bankruptcy petition – the Vehicles were property of the bankruptcy estate. . . ."). Furthermore, neither court analyzed the res judicata effect of a confirmed plan; neither court entered a confirmation order. *See generally In re Paul*, 534 B.R. 430; *In re Oglesby*, 2001 WL 34047880. Each creditor still had an opportunity to object to the plan. *Id.*

Title Max cites *Moore v. Complete Cash Holdings, LLC (In re Moore)* to support its position. 448 B.R. 93 (Bankr. N.D. Ga. 2011). In *In re Moore*, the debtors entered into two pawn transactions. They filed a Chapter 13 petition prior to the expiration of the grace periods.

5

The court confirmed the plan after the redemption period provided by § 108(b) had expired. However, the debtors failed to list the correct party in interest in their schedules or list of creditors. As a result, the actual party in interest did not receive notice of the case as a listed creditor and did not receive notice of the plan prior to confirmation. Eleven months after confirmation, the debtor filed a modification to correct the name of the creditor. *Id.* at 97-98. These facts are distinguishable from the facts of the case at hand. As discussed further below, Title Max was listed in the Debtor's Schedule D and received notice of the plan and the confirmation hearing.

II.      Modifying Rights through the Plan

Under § 1322(b)(2), a debtor may modify the rights of the holders of secured claims through his plan. 11 U.S.C. § 1322(b)(2). However, § 108(b) sets a time bar on exercising the state law right to redeem property. 11 U.S.C. § 108(b). In *Francis v. Scorpion Group, LLC (In re Francis)*, the court noted that courts are divided on how to reconcile § 108(b) with § 1322(b). 489 B.R. 262, 269 (Bankr. N.D. Ga. 2013). The court agreed with the line of cases concluding that "[§] 108 was meant to expand the state law rights of debtors" rather than "limit the rights the Bankruptcy Code otherwise provides the debtor." *Id. See also In re Rumious*, 487 B.R. 883, 886 (Bankr. N.D. Ill. 2013) ("Debtors are not restricted by § 108(b), which 'must be viewed in light of and in comparison with the broad powers to modify claims accorded Chapter 13 debtors as well as the predominant policy of Chapter 13 to afford debtors the opportunity to save their residential real estate.'" (quoting *In re McKinney*, 341 B.R. 892, 902 (Bankr. C.D. Ill. 2006))); *In re Bates*, 270 B.R. 455, 467 (Bankr. N.D. Ill. 2001) (concluding that a Chapter 13 plan can provide for treatment of a claim so long as the redemption period has not expired prior to the

6

bankruptcy filing, regardless of whether the redemption period expires after the fact); *Hammond v. Allegheny Cty. Treasurer (In re Hammond)*, 420 B.R. 633, 636 (Bankr. W.D. Pa. 2009) (agreeing with Illinois courts that debtors may "use the Bankruptcy Code to stretch out payments as a means of redemption").

This Court agrees with that line of cases. The Bankruptcy Code incentivizes consumer debtors to file for Chapter 13 bankruptcy relief rather than Chapter 7 by allowing such debtors to modify the rights of secured creditors. *In re Martin*, 496 B.R. 323, 328 (Bankr. S.D. N.Y. 2013). The reconciliation of the extension of state law rights under § 108(b) and the relief provided by § 1322 is not a matter of the supremacy of laws. Rather, any tension between the two provisions is reconciled by recognizing that "a debtor's right to redeem under state law is important only to establish what state-law property rights the debtor held at the time the bankruptcy petition is filed" and filing under Chapter 13 provides the debtor with rights under § 1322. *Id.* (analyzing § 108(b) in conjunction with § 1322(c)(1), which provides for a cure of default on debtor's principal residence until foreclosure). To hold otherwise would deny a Chapter 13 debtor a right provided by Chapter 13.

The filing of a Chapter 13 plan during the redemption period is only effective against a creditor if the creditor's rights can be characterized as a claim under § 101. *In re Francis*, 489 B.R. at 267. Title Max argues that it had no rights to modify under § 1322 because Title Max was no longer the holder of a secured claim as of December 1. Section 101(5) defines a "claim" as a:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or

7

(B) right to an equitable remedy for breach or performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

Although a pawn transaction under Georgia law provides the borrower with a non-recourse loan, "both parties contemplate the [borrower] having to pay the amount advanced and all charges and interest" when entering into the transaction. *In re Young*, 281 B.R. 74, 79 (Bankr. S.D. Ala. 2001).[3]  A pawn broker has a contingent right to payment. *Id.*[4]  Therefore, a pawnbroker is a holder of a claim.  Title Max is a holder of a claim that may be modified by the Debtor through his Chapter 13 plan.  Because Title Max's claim may be modified through the plan, the Court must now determine the effect of the confirmed plan on Title Max's claim.

### III.    Effect of Confirmation

The Bankruptcy Code requires bankruptcy courts to hold a hearing on confirmation.  11 U.S.C. § 1324(a).  Section 1324(a) explicitly grants creditors the right to object to confirmation. 11 U.S.C. § 1324(a).  Pursuant to Federal Rule of Bankruptcy Procedure 3015(f), "[a]n objection to confirmation of a plan shall be filed and served . . . before confirmation of the plan." Fed. R. Bankr. P. 3015(f).  Furthermore, "if no objection is timely filed, the court may determine that the

---

[3] In *In re Young*, Alabama law governed the pawn transaction between the debtor and the creditor. 281 B.R. at 77. The provisions of the Alabama Pawn Shop Act interpreted by the court are similar to the Georgia statutes being interpreted by this Court.  Alabama law "provides that each pawn ticket must state the maturity date of the pawn transaction as well as the amount due and that 'pledged goods not redeemed within thirty days following the maturity date shall be forfeited to the pawn broker and absolute right, title, and interest in and to the goods shall vest in the pawn broker.'" *Id.* (quoting Ala. Code §§ 5-19a-3(7), -6 (1975)).

[4] "A 'contingent claim' is defined as 'one which has not accrued and which is dependent upon some future event that may never happen." *In re Young*, 281 B.R. at 79 (citing *Contingent*, BLACK'S LAW DICTIONARY (6th ed. 1990)).

8

plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues." Fed. R. Bankr. P. 3015(f).

An order confirming a plan has the effect of binding the debtor and each creditor, regardless of whether the plan provides for the claim of such creditor. 11 U.S.C. § 1327(a). It also binds each creditor regardless of whether such creditor "has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). The order "fixes the rights of all parties and binds them to the terms of the plan." *In re Young*, 281 B.R. at 80 (quoting *In re Clark*, 172 B.R. 701, 703 (Bankr. S.D. Ga. 1994)).

The doctrine of res judicata encourages judicial efficiency by barring courts "from relitigating issues that have been litigated . . . or from litigating issues that may have been litigated." *Id.* at 79. The following four requirements must be met for a court to preclude a claim from adjudication: (1) a court of competent jurisdiction entered a prior judgment; (2) there was a final judgment on the merits; (3) the same parties are involved; and (4) the subsequent proceeding involves the same cause of action or claim. *Id.* at 80.

In *In re Young*, the court determined that an order of confirmation was a final judgment on the merits by a court of competent jurisdiction. *Id.* Additionally, the court determined that the creditor and the debtor were parties as to the confirmation of the plan. *Id.* The debtor listed the creditor as secured in her Schedule D, and her plan proposed to pay the full amount of the debt as listed. Despite being sent notice of the confirmation hearing, the creditor did not participate in the hearing. *Id.* Lastly, the court found that the subsequent "action [was] the same as the claim or cause of action that could have been raised at confirmation." *Id.* The court reasoned that the motion to enforce the automatic stay, which was the subject of the subsequent action, "relate[d] directly to the nature of the [creditor's] claim and [its] status as a creditor." *Id.*

The confirmation order has the effect of binding any party that could have objected to confirmation prior to the court entering the order but failed to timely do so. *Id.* Accordingly, this Court holds that Title Max is bound by the Debtor's confirmed Chapter 13 plan. The Debtor listed the debt owed to Title Max, in the amount of $5,825, in his Schedule D. On October 2, 2015, Title Max was sent notice of the confirmation hearing to be held on December 21, 2015. Both the Debtor and Title Max were parties to the confirmation of the plan. The Court confirmed the Debtor's plan at the confirmation hearing and entered a confirmation order. Despite being sent notice of the plan and the hearing, Title Max failed to timely object to confirmation. Title Max slept on its rights by not timely objecting. Title Max's motion for relief from the stay is directly related to the nature of Title Max's claim and its status as a creditor. Its request for relief is premised on the treatment of its claim under the Debtor's confirmed plan. Consequently, the confirmation order precludes Title Max from now objecting to the treatment of its claim. *See In re Young*, 281 B.R. at 80 ("After having slept on [its] rights, [the creditor] cannot now complain about the treatment of its secured claim.").

**Conclusion**

Pursuant to § 1327(a), Title Max is bound by the terms of the Debtor's confirmed plan. The Debtor had a right of redemption at the time he filed his petition. Therefore, his bankruptcy estate has a right of redemption. Additionally, the bankruptcy estate has a possessory interest in the vehicle because the Debtor was in possession of the vehicle at the commencement of the case and is currently in possession of it. Those rights did not extinguish at the expiration of the sixty days provided by § 108(b). The Debtor still had the right to redeem the vehicle under Georgia law at the time he filed his petition, and he is still in possession of the vehicle.

Title Max is the holder of a secured claim, and the Debtor's confirmed plan provides for treatment of that claim. Under the confirmed plan, Title Max has a secured claim of $5,825 with 5% interest. The claim is to be paid through the plan by monthly payments of $160. Title Max failed to object to the plan prior to confirmation. The doctrine of res judicata bars Title Max from now objecting to the confirmed plan.